## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

WILFORD CARL THOMPSON, JR.,   )
   )
       Petitioner,   )
   )
vs.   )   **Case No. 10-CV-738-TCK-TLW**
   )
TERRY MARTIN, Warden,[1]   )
   )
       Respondent.   )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1), filed by Petitioner Wilford Carl Thompson, Jr., a state prisoner appearing pro se. Respondent filed a response (Dkt. # 5) and a supplement (Dkt. # 12), as well as the state court records (Dkt. ## 7, 8) necessary for the adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 9) and a supplemental reply (Dkt. # 14). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### BACKGROUND

Petitioner challenges his convictions of First Degree Murder, Possession of a Stolen Vehicle, and First Degree Burglary entered in Tulsa County District Court, Case No. CF-2005-4330. In adjudicating Petitioner's direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) summarized the facts giving rise to Petitioner's convictions. Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by a state court are presumed correct unless the applicant rebuts the

---

[1]Petitioner is currently incarcerated at Dick Conner Correctional Center in Hominy, Oklahoma. The proper respondent in this case is Terry Martin, Warden. See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk shall be directed to substitute Terry Martin, Warden, in place of Greg Province as party respondent in this matter.

presumption by clear and convincing evidence.  Following review of the trial transcripts and other

materials submitted by the parties, the Court finds the summary by the OCCA, as set forth below,

is adequate and accurate.  Therefore, the Court adopts this summary as its own.  Additional facts,

apparent from the record, may be presented throughout this opinion as they become pertinent to the

Court's analysis.

On September 13, 2005, 86-year-old Georgia Reeves Sherman was found dead in her home in Tulsa, Oklahoma. Bythelda Drake, a relative, had been trying repeatedly to reach Mrs. Sherman since the end of August. On September 13, she called the police.

When Officer Steven Sanders arrived that evening, he walked around the Sherman house knocking on doors and peering in windows, unable to rouse anyone inside. He discovered an open window with its screen removed, but was unable to climb through it because debris blocked his entry. When he smelled what he believed to be decomposing human remains, police officers forced entry into the house. Paramedics found Mrs. Sherman's body, in an advanced state of decay, in her bedroom.

At trial the medical examiner estimated she had been dead for approximately two weeks before her body was found. The autopsy found Mrs. Sherman had sustained multiple severe linear skull fractures and a broken mandible. The medical examiner, with the help of a forensic anthropologist, reconstructed Sherman's skull from its broken pieces and ruled that blunt force trauma was the cause of her death.

The testimony at Thompson's murder trial showed that one day near the end of August, Mrs. Sherman ran from her house to her neighbors, the Scotts, across the street. She was frightened and told Mrs. Scott a strange man was following her. When Thompson approached the neighbors' house, Mrs. Sherman pointed to him and insisted she didn't know who he was. Thompson responded that she did know him; he was a relative of hers. Mrs. Scott and her grandson, Ferris Vickers, told Thompson to leave because Mrs. Sherman was afraid of him. Thompson walked away, and Mrs. Sherman went home.

Mrs. Scott remembered seeing Mrs. Sherman's red Chevy Malibu in the driveway that day as she watched her walk back across the street. She never saw the car again. Several witnesses testified that for a period of several weeks beginning near the end of August they saw Thompson driving a red Chevy Malibu, the same make, model and color as Mrs. Sherman's car.

On September 20, 2005, Tulsa police officers found Sherman's missing car at an abandoned house near Thompson's home. While the license plates did not match, police confirmed that the vehicle belonged to Sherman through the vehicle identification number. Police executed a search warrant at Thompson's home and found Thompson hiding in a car in the garage. During an interview following his

arrest he admitted that he had been driving Sherman's car for two weeks and that he had switched the license plates. Thompson denied stealing the car or killing Sherman, however. He offered the explanation that he had been given the car by a friend in order to make a drug delivery.

(Dkt. # 5-3).

The record reflects that Petitioner was charged by Third Amended Felony Information with Murder - First Degree and/or in the alternative Felony Murder (Count I), Possession of a Stolen Vehicle (Count II), and Burglary - First Degree (Count III). (Dkt. # 7-10, O.R. at 2). A jury found Petitioner guilty of both Murder - First Degree and Felony Murder (Count I), and guilty of Counts II and III. See Dkt. # 7-8, Tr. Vol. V at 980-81. The jury recommended a sentence of life imprisonment without parole for Count I and life imprisonment for each of Counts II and III. Id. The trial court sentenced Petitioner in accordance with the jury's recommendation, advising Petitioner that First Degree Burglary "is an 85% crime," and ordering the sentences to be served consecutively. See Dkt. # 7-9, Tr. Sentencing at 7-8. At trial, Petitioner was represented by Assistant Public Defender David Phillips.

Petitioner, represented by Assistant Public Defender Curtis M. Allen, appealed to the OCCA. He raised three (3) propositions of error:

| Proposition I: | The trial court failed in its duty to instruct the jury on the lesser related offenses of second degree murder, and in the alternative, second degree felony murder and first degree heat of passion manslaughter, which were supported by the evidence, even absent a request from Appellant. |
|---|---|
| Proposition II: | The trial court erred in permitting the State to introduce evidence of prior convictions in a sentencing proceeding for first degree malice murder and first degree felony murder. |
| Proposition III: | It was error to deny defense counsel's request to provide the jury with an instruction defining "reasonable doubt." |

(Dkt. # 5-1).  On July 24, 2009, in an unpublished opinion, the OCCA affirmed the judgment and sentence on Counts II and III, but modified the sentence for Count I from life imprisonment without the possibility of parole to life imprisonment with the possibility of parole "[b]ecause Thompson's jury was erroneously instructed to consider prejudicial information in the form of prior convictions in reaching a sentence for the count of First Degree Murder."  (Dkt. # 5-3 at 9).

On April 8, 2010, Petitioner filed an application for post-conviction relief in the trial court. (Dkt. # 5-6).  Petitioner raised four (4) propositions of error:

Proposition I:    As a result of petitioner's appellate counsel['s] failure to raise trial counsel's failure to examine readily mitigating records and argue the issue of legal insufficiency of evidence presented by prosecution at petitioner's trial, petitioner received ineffective assistance of counsel at his trial and on his direct appeal and appellate counsel rebutted petitioner's request that this crucial evidence be brought forward on his direct appeal.  Ratliff v. U.S., 999 F.2d 1023, 1026 (6th Cir. 1993).

Proposition II:   As a result of appellate counsel's failure to investigate and argue readily available mitigating records that indicated the ineffectiveness of trial counsel who failed to argue the illegal arrest of petitioner which brought forth an illegally obtained "statement," which was called a "confession," petitioner received ineffective assistance of trial counsel at his trial and appellate counsel on his direct appeal.

Proposition III:  As a result of appellate counsel and trial counsel's failure to raise issue of prosecutorial misconduct at petitioner's trial and on his direct appeal, petitioner received ineffective assistance of counsel.

Proposition IV:   The cumulative effective of errors discussed above requires the reversal of my conviction and/or an evidentiary hearing and granting of a new trial.

(Dkt. # 5-6).  On May 19, 2010, the trial court denied Petitioner's application for post-conviction relief. (Dkt. # 5-8).  The court found that "Petitioner's trial counsel acted as a reasonably competent attorney under the facts and circumstances of this case."  Id. at 4.  It also found that "Petitioner's

4

appellate counsel carefully selected legal issues to be raised on appeal" and that "Petitioner's allegations of error fail to establish that the results of petitioner's direct appeal or the jury verdict of guilt beyond a reasonable doubt would have been changed." Id. at 5.  The OCCA affirmed the district court.  (Dkt. # 5-11 at 2).

On November 19, 2010, Petitioner timely filed his petition for a writ of habeas corpus.  He raises seven (7) grounds of error, the same raised on direct appeal and in his application for post-conviction relief.  See Dkt. # 1.  Grounds I - III are those raised on direct appeal and Ground IV - VII are those raised in his application for post-conviction relief.  Respondent argues that Ground I is a matter of state law; Ground II is a matter of state law, but is also moot because the OCCA reduced Petitioner's sentence to the minimum under the statute; Grounds IV - VII are procedurally barred from review or, in the alternative, have no merit; and the OCCA's decision on Ground III is not contrary to or an unreasonable application of federal law as determined by the Supreme Court. (Dkt. # 5).  Respondent also argues, in the alternative, that Grounds IV - VII fail on the merits.  Id. at 21.

*ANALYSIS*

**A.**      **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented his claims to the OCCA on direct appeal and post-conviction appeal.  However, in response to Ground II, Respondent argues, "[t]o the extent that the petitioner now claims that the OCCA should have reversed his **conviction** for First Degree Murder due to a sentencing error that occurred in the second stage of trial, the petitioner's claim is technically unexhausted and

procedurally barred." (Dkt. # 5 at 9). However, Respondent concedes that the Court "can forego the more complicated issue of procedural bar and deny the petitioner's claim on the merits since it raises only an issue of state law, and it is moot." Id. at 10. Petitioner claims he has exhausted his state court remedies. (Dkt. # 9 at 1).

It is clear that, in light of the procedural posture to this case, it would be futile to require the Petitioner to return to state court as the OCCA would impose a procedural bar on any claim first raised in another application for post-conviction relief. Therefore, the Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S.

685, 699 (2002); <u>Hooper v. Mullin</u>, 314 F.3d 1162, 1169 (10th Cir. 2002). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 784-85 (2011).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. <u>Id.</u> at 68 (citing 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975)).

**1.     Jury instructions for lesser included offenses (Ground I)**

In Ground I, Petitioner complains that the trial court failed to give jury instructions for second degree murder, second degree felony murder, and first degree heat of passion manslaughter. (Dkt. # 1 at 3). He argues that the OCCA's "decision to deny petitioner relief was based on an erroneous determination of the facts of the case." <u>Id.</u> at 4. Petitioner also argues, as he did on direct appeal, that "[i]t is the trial court's duty to instruct the jury on all lesser related offenses that are supported by the evidence, even absent a request from a defendant." (Dkt. # 5-1 at 10 (citing <u>Shrum v. State</u>, 991 P.2d 1032, 1034 (Okla. Crim. App. 1999))). The OCCA reviewed Petitioner's claim under a plain error standard. (Dkt. # 5-3 at 3). The court examined the elements of all three of the requested lesser included offenses and concluded that the evidence in Petitioner's case did not warrant any of the three jury instructions. <u>Id.</u> at 4-7. Respondent argues this is a state law matter and is not subject to federal habeas corpus review. (Dkt. # 5 at 6).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977))); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). "An omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Maes, 46 F.3d at 984 (citations omitted).

Of particular importance to this case, however, "a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.'" Lujan v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993) (quoting Chavez v. Kerby, 848 F.2d 1101, 1103 (10th Cir. 1988)); see also Hicks v. Jones, 350 F. App'x 199, 202 (10th Cir. 2009) (unpublished).[2]  Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). Accordingly, Petitioner's claim for habeas relief shall be denied on Ground I.

_____

[2]This and any other unpublished court decision is cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

2.      **Sentencing error (Ground II)**

In Ground II, Petitioner claims the trial court erred when it allowed evidence of Petitioner's prior convictions in the sentencing proceeding for first degree murder. (Dkt. # 1 at 5). He also claims that the OCCA's "decision to only modify Petitioner's sentence from Life Without Parole to Life with the Possibility of Parole was contrary to the controlling authority, as the OCCA should have reversed the conviction and remanded the case for a new trial, or dismissal." Id. Respondent argues that this particular claim is unexhausted, but nevertheless is without merit and is a matter of state law. (Dkt. # 5 at 9-10). The Court concluded, in Part A above, that this claim is exhausted for purposes of § 2254(b).

Petitioner was charged with Murder in the First Degree and/or in the alternative Felony Murder while engaged in the commission of First Degree Burglary, Possession of a Stolen Vehicle, and First Degree Burglary. (Dkt. # 7-11, O.R. at 186-88). The jury found him guilty of Murder in the First Degree, Felony Murder, Possession of a Stolen Vehicle, and First Degree Burglary. Id. at 179-181. Sentencing options for the murder conviction were life or life without the possibility of parole. See Okla. Stat. tit. 21, § 701.9. Because he had two or more prior felony convictions, Petitioner faced up to a life term of imprisonment for each of Counts II and III.[3] (Dkt. # 7-11, O.R. at 229-235). At sentencing, the State elected to have Petitioner sentenced on the First Degree Murder conviction, see Dkt. # 7-9, Tr. Sentencing at 4, and Petitioner was sentenced to life without parole for that conviction, and to life for each count of Possession of a Stolen Vehicle and First Degree Burglary, id. at 7-8. On direct appeal, Petitioner requested a modification of punishment for

---

[3]Petitioner had four previous felony convictions: Possession of Stolen Vehicle, Robbery with Firearm(s), Kidnapping, and Robbery with Firearm(s). (Dkt. # 7-11, O.R. at 229-235).

First Degree Malice Murder and First Degree Felony Murder.  (Dkt. # 5-1 at 14).  He "pray[ed] that [the OCCA] affirm only so much sentence as Count One as [sic] provides for life imprisonment." (Dkt. # 5-1 at 16).  The OCCA granted Petitioner's requested relief.  (Dkt. # 5-3 at 9).

Sentencing issues are state law questions.  A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law."  Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000).  Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute."  Id.  To the extent Petitioner is claiming that the OCCA's modification was contrary to controlling authority, this Court "'will not second guess a state court's application or interpretation of state law on a petition for habeas unless such application or interpretation violates federal law.'" Bolton v. Franklin, 191 F. App'x 780, 781 (10th Cir. 2006) (unpublished) (quoting Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir. 1994)).  Under Oklahoma law, the OCCA is authorized to modify a sentence.  See OKLA. STAT. tit. 22, § 1066.  Here, the OCCA modified Petitioner's sentence to the statutory minimum, life with the possibility of parole, not exceeding the maximum sentence authorized under Oklahoma law.  This Court could not grant any more relief than he has already obtained from the state courts.  Therefore, Petitioner fails to assert a cognizable claim and habeas relief is denied.

### 3.    Denied "reasonable doubt" instruction (Ground III)

In Ground III, Petitioner claims that it was error for the trial court to "deny defense counsel's request to provide the jury with an instruction defining 'reasonable doubt.'" (Dkt. # 1 at 6). Petitioner argues in his habeas petition, as he did on direct appeal, that "[g]iven the modification of

the circumstantial evidence instruction herein, it was error to refuse an accurate instruction defining reasonable doubt." (Dkt. # 5-1 at 18). Petitioner argues that in Easlick v. State, 90 P.3d 556 (Okla. Crim. App. 2004), the OCCA "held, *if a proper reasonable doubt instruction is given*, a jury need not be instructed that circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt."[4] Id. at 17. On direct appeal, the OCCA rejected Petitioner's argument, stating "[t]his claim has been raised and rejected several times" and declined "to re-examine those decisions." (Dkt. # 5-3 at 9-10). Respondent argues that the OCCA's decision "is neither contrary to nor an unreasonable application of federal law." (Dkt. # 5 at 10).

This issue has been addressed by the United States Supreme Court in Victor v. Nebraska, 511 U.S. 1, 5 (1994), as follows:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Cf. Hopt v. Utah, 120 U.S. 430, 440-441, 7 S. Ct. 614, 618-20, 30 L. Ed. 708 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see Jackson v. Virginia, 443 U.S. 307, 320 n.14, 99 S. Ct. 2781, 2789, n.14, 61 L. Ed. 2d 560 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

Victor, 511 U.S. at 5. Here, the trial court instructed the jury, several times, on the need to determine Petitioner's guilt beyond a reasonable doubt. In Jury Instruction No. 4, the court

---

[4]In Easlick, the OCCA abolished its use of the "reasonable hypothesis" test, in favor of the test found in Spuehler v. State, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985). The OCCA stated that the "reasonable hypothesis" test was based on antiquated ideas concerning the value of circumstantial evidence. Easlick, 90 P.3d at 559. The OCCA, pursuant to Holland v. United States, 348 U.S. 121, 139-140 (1954), stated that "if a proper reasonable doubt instruction is given, a jury need not be instructed that circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt." Easlick, 90 P.3d at 558. The OCCA held that it will "review sufficiency of the evidence issues under the Spuehler standard, regardless of whether the evidence is wholly circumstantial or whether it is based in whole or in part on direct evidence." Id. at 559.

11

instructed, "[t]he defendant is presumed innocent of the crime charged, and the presumption continues unless, after consideration of all the evidence, you are convinced of his guilt beyond a reasonable doubt. The State has the burden of presenting the evidence that establishes guilt beyond a reasonable doubt." (Dkt. # 7-11, O.R. at 192). Additionally, in the jury instructions for each of the crimes charged, the court instructed, "[n]o person may be convicted of [the crime charged] unless the State has proved beyond a reasonable doubt each element of the crime." Id. at 217, 220, 222, 224. Furthermore, during closing argument, Petitioner's counsel told the jury, that

> [i]t is the responsibility of a police department and the district attorney to provide you with competent evidence and to provide you with proof beyond a reasonable doubt. And in order to evaluate how you provide proof beyond a reasonable doubt, they have to provide you with facts.

(Dkt. # 7-8, Tr. Vol. V at 928). The jury was properly advised of the government's burden of proof.

Nothing in the record suggests that there is a reasonable likelihood that the jury was misled or misunderstood their instructions, or allowed a conviction based on proof insufficient to meet the constitutional requirement of "reasonable doubt." Therefore, Petitioner's trial was not rendered fundamentally unfair as a result of the trial court's failure to instruct the jury as requested by Petitioner nor is the OCCA's decision contrary to, or an unreasonable application of, federal law as interpreted by the Supreme Court. Petitioner is not entitled to habeas corpus relief on Ground III.

### 4. Ineffective trial and appellate counsel (Grounds IV, V, and VI)

In Grounds IV, V, and VI, Petitioner raises claims that this appellate counsel was ineffective. These claims are intertwined with Petitioner's claims of ineffective assistance of trial counsel. Respondent argues that "petitioner's ineffective assistance of trial counsel claims were properly barred by the [OCCA], and that bar should be respected by this Court." (Dkt. # 5 at 17). However, after a review of the record, the Court finds that while the OCCA applied a procedural bar to the

12

claims of ineffective trial counsel, the court then proceeded to address those claims on the merits.

See Dkt. # 5-11 at 3.  Generally, a federal habeas court will not review a claim rejected by the state

court on a state law ground that is independent of the federal question.  Coleman v. Thompson, 501

U.S. 722, 729 (1991).  Here, however, the OCCA reached the merits of Petitioner's claims of

ineffective trial counsel, despite concluding that Petitioner's claims "should have been presented on

direct appeal, but [were] not, and [are] waived."  (Dkt. # 5-3 at 3).  Therefore, the Court will review

Petitioner's claims of ineffective trial and appellate counsel under the § 2254(d) standard.

### a.    Ineffective trial counsel

Petitioner raises several claims of ineffective trial counsel in his habeas petition.  First, in

Ground IV, Petitioner claims his trial counsel failed to examine mitigating evidence and argue

insufficient evidence.  (Dkt. # 1 at 7).  In Ground V, Petitioner claims his trial counsel "failed to

argue the illegal arrest . . . brought forth an illegally obtained . . . 'confession.'"  Id. at 8.  In Ground

VI, Petitioner claims his trial counsel was ineffective for failing to raise prosecutorial misconduct.

Id. at 9.  Petitioner presented these claims to the OCCA on post-conviction appeal.  As stated above,

though the OCCA stated that these claims were waived, it proceeded to conclude that, "even if we

found Petitioner's ineffective assistance of trial counsel claim was subject to review, we find nothing

in this record indicating that either trial or appellate counsel was ineffective."  (Dkt. # 5-11 at 3).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel,

Petitioner must demonstrate that his counsel's performance was deficient and the deficient

performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v.

Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  Further, Petitioner must demonstrate that the

OCCA's adjudication of this claim is contrary to Strickland.  See 28 U.S.C. § 2254(d).  "For

purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" <u>Richter</u>, 131 S. Ct. at 785 (quoting <u>Williams v. Taylor</u>, 529 U.S. 364, 410 (2000) (O'Connor, J. concurring)).  "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.  Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." <u>Id.</u>

     <u>Strickland</u> sets out a two-pronged standard for review of ineffective assistance of counsel claims.  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  <u>Strickland</u>, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." <u>Id.</u> at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689.

     To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see also</u>

14

Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

In Ground IV, and in his application for post-conviction relief, Petitioner claims that his trial counsel failed to examine mitigating evidence in the form of DNA evidence, and failed to "bring[] this evidence forward at petitioner's trial." (Dkt. # 5-6 at 3). Petitioner claims that the "evidence of the State includes the DNA evidence not connected to the crime scene at all and excluding the DNA evidence of 'skin' found under the victim's fingernails that excluded petitioner altogether." Id. at 5.

After a review of the record, the Court finds Petitioner's claim lacks merit. The mitigating DNA evidence Petitioner claims his trial counsel failed to introduce at trial was introduced by the State during direct examination of State's forensic expert, Valerie Fuller, Ph.D. See Dkt. # 7-7, Tr. Vol. IV at 649-660. Dr. Fuller conducted DNA analysis on evidence items ## 13, 14, 21, 21C1, 21C3, 43, and 43AR9, as identified on the Tulsa Police Department Forensic Laboratory Report. (Dkt. # 5-6 at 17-18). During direct examination, the prosecutor asked Dr. Fuller, "with regard to 13 and 14, you can say that Ms. Thompson [sic] didn't have his DNA under her fingernails." Id. at 660. Dr. Fuller responded, "[y]es. I can definitely say that his DNA was not on there." Id.

Petitioner's trial counsel also thoroughly cross-examined Dr. Fuller.  <u>Id.</u> at 663-675. Petitioner's trial counsel asked Dr. Fuller, "there is no DNA from all these things that you can definitely say that Mr. Thompson is a contributor to?"  Dr. Fuller responded,

> On item 13 and 14, the fingernails, Thompson is definitely excluded.  On item 21-C-1, the finger of the glove, it looks like the major contributor is the victim. There is a small amount of male minor contributor but it's just too low to say anything about.
> On item 21-C-3, I'm not sure if Thompson is on there or not.  All I can say is I can't tell you he's not on there.  There's a lot of people on there.  On item 4, [sic] I figure looks like he's on there, but it's his own boots.  So I went ahead and I subtracted him and got leftover DNA from a completely unknown individual.  That's what I know from my testing.

<u>Id.</u> at 675-76.  Petitioner's counsel asked again, "And so other than item 43, you can't tell . . . that Mr. Thompson was a major contributor to any one of those particular items or if the – of DNA that you tested, is that correct?"  <u>Id.</u> at 676.  Dr. Fuller responded, "[t]hat's correct."  <u>Id.</u>  The record simply does not support Petitioner's claim that the available DNA evidence was not introduced at trial or that Petitioner's counsel failed to examine this mitigating evidence.  The evidence was introduced at trial and Petitioner's counsel cross-examined the State's expert on the results of the DNA analyses.

Additionally, Petitioner's claim that his trial counsel failed to argue that the State did not present sufficient evidence to convict Petitioner is not supported by the record.  At the conclusion of the State's case, Petitioner's counsel demurred to the evidence.  (Dkt. # 7-8, Tr. Vol. V at 884). In Oklahoma, when a court is "ruling on the demurrer to the evidence, the trial court must determine whether there is competent evidence which reasonably tends to sustain the allegations of the charge, and if there is, the demurrer should not be sustained."  <u>Hommer v. State</u>, 657 P.2d 172, 176 (Okla. Crim. App. 1983) (citing <u>Roberts v. State</u>, 571 P.2d 129 (Okla. Crim. App. 1977)).  Therefore,

Petitioner's trial counsel did challenge the sufficiency of the evidence presented by the State, and Petitioner's claim of ineffective trial counsel fails.

Next, in Ground V, Petitioner claims, as he did in his application for post-conviction relief, that his trial counsel failed to investigate "readily available mitigating records indicating illegal arrest and statement used against petitioner at his trial." (Dkt. # 5-6 at 8).  Petitioner claims he was unlawfully arrested by Tulsa Police with a search warrant, rather than an arrest warrant, and subjected to "hours of questioning before any charge was brought against [him]." Id.  Petitioner claims that "all evidence seized by Tulsa Police and statements made to Detective Nance were fruits from the unlawful police activity and should not have been introduced at petitioner's trial." Id. at 8-9.  Thus, Petitioner claims his trial counsel was "deficient for failing to perform due diligence in exposing this fundamental miscarriage of justice by police officials." Id. at 9.  Respondent argues that there was probable cause for the search of the residence where Petitioner lived and for his arrest. (Dkt. # 5 at 35-37).  Petitioner responds by stating, "Tulsa Police Department acted in bad faith when they arrested Petitioner prior to serving a warrant that allowed only a search, without having any probable cause to actually arrest Petitioner." (Dkt. # 9 at 2).

After a review of the record, the Court finds that Petitioner's claims lack merit.  Petitioner has not shown that trial counsel performed deficiently in failing to challenge the legality of his arrest.  "A court will find probable cause to arrest when facts and circumstances from a reasonably trustworthy source are within the officer's knowledge and sufficiently warrant a person of reasonable caution to believe a crime has been or is being committed by the person to be arrested." United States v. Pearson, 203 F.3d 1243, 1268 (10th Cir. 2000) (citing United States v. Morgan, 936 F.2d 1561, 1568 (10th Cir.1991)).  During the search of Petitioner's residence and bedroom, police

recovered several items identified in the search warrant and found Petitioner hiding in the backseat of a vehicle, in a detached garage at the rear of the property.  Additionally, during the <u>Jackson v. Denno</u>[5] hearing, defense counsel questioned Tulsa Police Detective Jeffrey Felton why he "did not make application for an arrest warrant," before arresting Petitioner.  (Dkt. # 7-3, Tr. Vol. I at 17).  Detective Felton testified that "[a]t that point of the investigation, we felt like we had probable cause that if we found Mr. Thompson that we would arrest him at that point."  <u>Id.</u>

The record demonstrates that Petitioner's trial counsel reviewed Petitioner's statements to police after his arrest.  At a pre-trial hearing, Petitioner's trial counsel told the trial court, "[w]e have not [filed a motion to suppress], Your Honor.  The statements that are made are not incriminatory in nature and are actually – the statements by the defendant are actually helpful to the case."  (Dkt. # 7-3, Tr. Hr'g Nov. 2, 2007 at 10).  At trial, during cross-examination of Detective Felton, Petitioner's counsel inquired whether the police conducted any follow-up investigations regarding the claims Petitioner made during his police interview.[6]  (Dkt. # 7-8, Tr. Vol. V at 855-873).  Petitioner's counsel asked Detective Felton whether he searched for, located, and/or interviewed any of the individuals that could corroborate Petitioner's story.  <u>Id.</u> at 856-57.  Based on the record, Petitioner's trial counsel made a strategic decision to use Petitioner's statements to support Petitioner's claims that he was guilty only of possession of a stolen vehicle and innocent of murder

---

[5]<u>Jackson v. Denno</u>, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

[6]In the police interview, Petitioner initially denied knowing Ms. Sherman, the victim, and told police that the reason he had the stolen car was because he was a "drug mule."  During the course of the "drug muling" story told to police, Petitioner identified three individuals – Derek Alexander, Chris Calvin, Donna Gist – as having knowledge of Petitioner's use of the victim's car.

and burglary.  There is nothing in the record, nor does Petitioner argue, that this decision was unreasonable.  Instead, Petitioner makes the unsupported allegations that his counsel failed to investigate the statement and his arrest.  Because that allegation is controverted by the record discussed above, Petitioner's claim of ineffective assistance of trial counsel in Ground V fails.

Finally, in Ground VI, Petitioner identifies several additional claims of ineffective assistance of trial counsel.  First, Petitioner appears to assert a <u>Brady</u> claim[7] against his trial counsel. (Dkt. # 5-6 at 10).  Petitioner states that his "rights were violated by his trial attorney who acted as *aminae curriae* [sic] by not bringing conclusive evidence of DNA that proved petitioner's factual innocence although petitioner's attorney had this critical evidence in his possession for many months."  <u>Id.</u> at 11.  Next, he claims that his trial counsel should have raised claims of prosecutorial misconduct when Petitioner was denied a "pretrial examination of physical evidence and technical reports."  <u>Id.</u> at 12.  Finally, Petitioner claims trial counsel should have requested a <u>Daubert</u> hearing[8] to examine the scientific and technical reports to be used at trial.  As a result of these failures, Petitioner argues that the State was allowed to use "only partial DNA evidence . . . against petitioner and not relevant parts that proves his factual innocence."  <u>Id.</u>

---

[7]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[8] <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) (laying out principles that determine whether the opinions offered by an expert witness are reliable and assessing the admissibility of expert testimony).  The Supreme Court, in <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), listed the four factors as "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether . . . there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" <u>Id.</u> at 149-50.

Petitioner elaborates on these claims in his Reply to Respondent's Response. He states that his trial counsel did "not explain[] DNA, forensic testing evidence used by State [against] Petitioner and only two (2) days notification that this evidence existed . . . ." (Dkt. #9 at 3). Petitioner continued, stating that "[s]urprise in the trial of cases often breeds prejudice and does nothing to implement justice." Id. (citing Layman v. State, 355 P.2d 44 (Okla. Crim. App. 1960)). Petitioner further argues, in his supplemental reply, that this "purposely isolated him and left him uninformed of critical evidence." (Dkt. # 14 at 2). Petitioner claims that had his counsel "kept Petitioner actively involved in his case, he would have been able to make informed choices, whether to acquiesce or contest certain pieces of evidence used against him before the appropriate decision-making body." Id.

The Court finds no merit in these claims. First, the record shows that the State turned over numerous items to the defense in discovery and the trial court held several hearings to ensure complete discovery. See, e.g., Dkt. # 7-10, O.R. at 1-17; Dkt. # 7-1, Tr. Hr'g Mar. 13, 2006 at 6. Thus, Petitioner was not denied a pretrial examination of physical evidence and technical reports. Second, the Court concluded above that the DNA evidence that Petitioner claims was kept out of the trial was, in fact, introduced into evidence by the State. This is a meritless claim. Third, Petitioner bears the burden of establishing that it was unreasonable for his trial counsel to fail to request a Daubert hearing. Petitioner has not satisfied his burden because he fails to explain what arguments his counsel could have made to prohibit the State's expert witnesses from testifying or that there is a reasonably likelihood that his trial counsel would have succeeded on that argument. Finally, as to Petitioner's apparent Brady claim against his own trial counsel, this claim also fails. In Strickler v. Greene, 527 U.S. 263 (1999), the Supreme Court explained that "[t]here are three

components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Id.</u> at 281–82. The information identified by Petitioner satisfies none of the three components. Petitioner complains only that his counsel failed to disclose evidence to him until two days before trial, not that the State failed to disclose evidence. Petitioner's claim has no merit.

In summary, the record does not support many of Petitioner's claims of ineffective trial counsel. Further, Petitioner fails to show how the actions of his trial counsel were unreasonable or that he was prejudiced by counsel's actions. Petitioner also fails to show that the OCCA's determination that there was "no evidence indicating that Petitioner was not properly represented at trial," was contrary to or an unreasonable application of federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). As a result, the Court finds that habeas relief must be denied on all claims of ineffective assistance of trial counsel.

### b.    Ineffective appellate counsel

Alongside his claims of ineffective trial counsel, Petitioner raises claims of ineffective assistance of appellate counsel. In Ground IV, Petitioner claims his appellate counsel "fail[ed] to raise trial counsel's failure to examine readily available mitigating records and argue the issue of legal insufficiency of evidence." (Dkt. # 1 at 7). Petitioner also claims that his "appellate counsel rebutted [his] request that this crucial evidence be brought forward on his direct appeal." <u>Id.</u> (citing <u>Ratliff v. United States</u>, 999 F.2d 1023, 1026 (6th Cir. 1993)). In Ground V, Petitioner claims appellate counsel "fail[ed] to investigate and argue readily available mitigating records indicating the ineffectiveness of trial counsel who failed to argue the illegal arrest . . . brought forth an illegally

21

obtained . . . 'confession.'" (Dkt. # 1 at 8).  Finally, in Ground VI, Petitioner claims appellate

counsel "fail[ed] to raise issue of prosecutorial misconduct."  Id. at 9.

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance

by failing to raise an issue on direct appeal, the court first examines the merits of the omitted issue.

Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  The Tenth Circuit has explained that,

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable
> to winnow it out even from an otherwise strong appeal, its omission may directly
> establish deficient performance; if the omitted issue has merit but is not so
> compelling, the case for deficient performance is more complicated, requiring an
> assessment of the issue relative to the rest of the appeal, and deferential consideration
> must be given to any professional judgment involved in its omission; of course, if the
> issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (footnote omitted) (citation omitted); see

also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998).  Just as with claims of ineffective

trial counsel, Petitioner is not entitled to relief on his claims of ineffective assistance of appellate

counsel unless he demonstrates that the OCCA unreasonably applied Strickland.

In Grounds IV, V, and VI, Petitioner raises claims that his appellate counsel was ineffective

for failing to raise ineffectiveness of trial counsel.  The Court reviewed the claims of ineffective trial

counsel above and concluded there was no merit.  Therefore, to the extent Petitioner claims his

appellate counsel was ineffective for failing to raise claims of ineffective trial counsel, those claims

fail.  The Court now turns to the remaining claims of ineffective appellate counsel.

In Ground IV, Petitioner also claims his appellate counsel was ineffective when he "rebutted

petitioner's request that this crucial evidence be brought forward on his direct appeal."  (Dkt. # 1

at 7 (citing Ratliff v. United States, 999 F.2d 1023, 1026 (6th Cir. 1993)).  In his application for

post-conviction relief, he claimed that his counsel "fail[ed] to argue petitioner's actual innocence

22

in petitioner's direct appeal though he wrote that, '[t]he State may concede that other portions of the State's evidence supports a claim of innocence, (at least with regard to murder and burglary.)'" (Dkt. # 5-6 at 3). He also claimed appellate counsel "fail[ed] to allow petitioner to examine brief-in-chief before submitting it, and also by rebutting his request to file a supplemental brief." Id. at 6.

After a review of the record, the Court concludes that Petitioner's claim fails. First, even if Petitioner's appellate counsel should have allowed Petitioner to review the direct appeal brief before filing it, Petitioner fails to show how he was prejudiced by appellate counsel's actions. Additionally, Petitioner has not explained how he was prejudiced when appellate counsel allegedly "rebutt[ed] his request to file a supplemental brief" on direct appeal. Second, Petitioner has failed to show that his appellate counsel was unreasonable for failing to raise claims of actual innocence. Petitioner offers nothing more than a conclusory statement and conclusory allegations are insufficient to meet the prejudice prong of Strickland. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice); see also United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) ("we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments" (citations omitted)). Finally, Petitioner's reliance on Ratliff is misplaced. Ratliff does not stand for the proposition that an appellate attorney is ineffective for failing to raise an issue on appeal that Petitioner wanted to pursue. Ratliff stands for the proposition that "cause" is established if a defendant asks appellate counsel to raise an issue that would have resulted in reversal or actual prejudice to a defendant, and appellate counsel fails to raise that issue. Ratliff, 999 F.2d at 1026.

Petitioner has failed to show that the issues omitted by appellate counsel would have resulted in a reversal or in actual prejudice to Petitioner.

In Ground V, Petitioner argues that appellate counsel was ineffective for failing to investigate "mitigating records indicating illegal arrest and statement used against petitioner at his trial." (Dkt. # 5-6 at 8). This Court concluded above that nothing in the record suggests that trial counsel was ineffective for failing to raise this same claim. Therefore, the Court cannot find that appellate counsel provided ineffective assistance in failing to raise a meritless claim. Habeas relief is not warranted.

In Ground VI, Petitioner argues that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct on direct appeal. (Dkt. # 1 at 9). Petitioner appears to claim that the prosecutor acted improperly with respect to introduction of the DNA evidence. Petitioner states that the "[p]rosecutors failed [to produce enough evidence] as the DNA found under victim's fingernails excluded petitioner as police reports indicated a struggle had taken place upon her demise." (Dkt. # 5-6 at 11 (citing In re Winship, 397 U.S. 358 (1993)). Had appellate counsel raised this claim of prosecutorial misconduct on direct appeal, the OCCA would have reviewed the claim for plain error. See Malone v. State, 293 P.3d 198, 211 (Okla. Crim. App. 2013). Oklahoma's plain error doctrine requires an appellant to satisfy a three-part test: (1) the existence of actual error, (2) the error is plain or obvious, and (3) the error affected the outcome of the proceeding. Id. (quoting Hogan v. State, 139 P.3d 907, 923 (Okla. Crim. App. 2006) (internal citations omitted). Petitioner has failed to convince the Court that the OCCA would have found plain error. As a result, Petitioner cannot show that the outcome of his appeal would have been different had appellate counsel raised this claim of prosecutorial misconduct.

In summary, the record does not support many of Petitioner's claims of ineffective appellate counsel nor does Petitioner demonstrate that the OCCA's adjudication of the ineffective assistance of appellate counsel claims was contrary to, or an unreasonable application of, <u>Strickland</u>. Therefore, habeas relief is denied on Petitioner's claims of ineffective assistance of appellate counsel.

## C. Procedural Bar

Respondent asserts that Ground VII, cumulative error, was "raised for the first time on post-conviction review." (Dkt. # 5 at 14). The OCCA stated that "all issues previously ruled upon by this Court are *res judicata*, and all issues not raised in the direct appeal, which could have been raised, are waived." (Dkt. # 5-11 at 1). Respondent argues that the OCCA correctly concluded that this claim was waived. (Dkt. # 5 at 14). Thus, Respondent urges this Court to respect the procedural bar applied by the OCCA. <u>Id.</u> at 17.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 724 (1991); <u>see also</u> <u>Maes v. Thomas</u>, 46 F.3d 979, 985 (10th Cir. 1995); <u>Gilbert v. Scott</u>, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." <u>Maes</u>, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" <u>Id.</u> (citation omitted).

25

Applying the principles of procedural default to the facts of this case, the Court concludes that Petitioner's Ground VII claim is procedurally barred from this Court's review.  Based on Okla. Stat. tit. 22, § 1086, the OCCA routinely bars claims that could have been but were not raised on direct appeal.  Thus, the bar imposed by the OCCA was "adequate" to preclude habeas review.  In addition, the state court's procedural bar as applied to this claim was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding."  Maes, 46 F.3d at 985.

When a state court imposes an independent and adequate procedural bar, this Court may not consider the claim unless the petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered. See Coleman, 501 U.S. at 750.  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  The "fundamental miscarriage of justice" exception to a procedural bar applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 495-96 (1986); Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); Schlup v. Delo, 513 U.S. 298 (1995). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In Ground VII, Petitioner argues that the "cumulative effect of errors discussed above requires the reversal of my conviction and/or an evidentiary hearing and granting a new trial." (Dkt. # 1 at 11). Petitioner states that ineffective appellate counsel is the "cause" for his failure to raise this claim on direct appeal. Id. In its review of the Petitioner's claims, the Court did not find any constitutional errors in Petitioner's trial. See Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (internal quotation omitted); Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470). Therefore, this Court cannot find Petitioner's appellate counsel ineffective for failing to raise a meritless claim. Cargle, 317 F.3d at 1202. Thus, unless Petitioner demonstrates that he falls within the fundamental miscarriage of justice exception, habeas relief will be denied based on procedural bar.

The fundamental miscarriage of justice exception is applicable only when a petitioner asserts a claim of actual innocence. Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime . . . . [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Petitioner claims

27

that, "should he be granted a[n] evidentiary hearing, he will be able to present facts that that [sic] will tend to prove his actual, factual innocence . . . ." (Dkt. # 1 at 15).   However, Petitioner provides no new evidence supporting his claim of innocence.   Therefore, petitioner has failed to demonstrate that he falls within the fundamental miscarriage of justice exception to the doctrine of procedural bar.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claim is not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's claim of cumulative error. Coleman, 510 U.S. at 724. He is not entitled to habeas corpus relief on Ground VII.

**D.      Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."   A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.   Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the court's ruling is based on procedural grounds, the petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

28

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). As to the claim denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the claim on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.      The clerk shall substitute Terry Martin, Warden, as party respondent.

2.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate judgment shall be entered in this matter.

**DATED** this 31st day of March, 2014.

**TERENCE KERN**
**United States District Judge**

29